UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CT-3120-BO

| | | |
|---|---|---|
| JONATHAN CREDLE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ROBERT C. LEWIS, et al., | ) | |
| Defendants. | ) | |

Jonathan Credle, an inmate within the custody of North Carolina, filed this 42 U.S.C. § 1983 action.[1] Defendants are now before the court with a motion to dismiss [D.E. 25]. Plaintiff responded to the motion [D.E. 28]. Plaintiff also seeks a motion for injunction or default judgment [D.E. 29] and another motion for preliminary injunction [D.E. 31] to which defendants responded. In this posture, the matter is ripe for determination.

A.  Issues

Credle appears to assert several claims. Each is difficult to understand and separate out, as each claim appears to be intertwined as presented by plaintiff. The named defendants are Jason Fowler, Brett Godwin, Josh Gore, Kristopher Strickland, Michelle Williams, Robert Todd, Michelle Ivey, Charmon Holsworth, and Casey Blackwell. The court identifies the claims as: 1) an excessive use of force incident on July 31, 2010, by defendant Casey Blackwell;[2] 2) deliberate

---

[1] For clarity's sake, the motion for leave to amend [D.E. 21] is allowed and is considered within this order.

[2] Casey Blackwell is named as the sole defendant to the use of force incident only (Claim One) and has not moved to dismiss that claim. Thus, while other defendants assert defenses as to Claim One, the court shall not address that as this court finds that Claim One names only defendant Blackwell. The court finds that Claim One is not presently before the court as defendant Blackwell has not joined in the motion to dismiss.

indifference to a serious medical condition by defendants Todd and Ivey; 3) mail violations on October 4, 2010, by defendant Fowler; 4) retaliation by defendant Holsworth and defendant Williams; 5) a second use of force incident on October 17, 2010, by defendants Godwin, Gore, and Fowler; and (5) retaliation and harassment after the second use of force incident. Compl., IV. Statement of Claim.

B.  Discussion

   i.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" U, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009) ("The plausibility standard ... requires the plaintiff to articulate facts, when accepted as true, that show ... the plausibility of entitlement to relief") (internal citations and quotation marks omitted).

In making the determination as to whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor will the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009). Moreover, a court may consider "documents incorporated into the

2

[pleadings] by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991).

    ii.    Qualified Immunity

Defendants assert qualified immunity. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244–45 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson, 555 U.S. at 231–32.

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Evans v. Chalmers, No. 11-1436, 2012 WL 6554846, at *5 (4th Cir. Dec. 17, 2012); Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). The court decides which question to address first. Pearson, 555 U.S. at 236; see Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a

3

constitutional right." Pearson, 555 U.S. at 232. The court also must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (alterations in original) (quotations omitted); see Reichle, 132 S. Ct. at 2093; Anderson v. Creighton, 483 U.S. 635, 640 (1987). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083; see Reichle, 132 S. Ct. at 2093. Defendants are entitled to qualified immunity if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic, 667 F. Supp. 2d at 606.

    iii.    Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979). In order to prove such a claim, Credle "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). In cases involving the denial of or the delay in providing medical treatment to a prisoner, the prison official must know of and disregard an objectively serious condition, medical need, or risk of harm. See, e.g., id.; Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir.1986). Further, disagreement with medical staff over the course of treatment is not sufficient to state an Eighth Amendment deliberate indifference claim. See, e.g., De'Lonta v. Angelone, 330 F.3d 630, 635 (4th Cir.

4

2003); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06. Lastly, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 129 S. Ct. at 1948; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985); and, Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982).

Here, Credle states that he continually sought medical care from the excessive force incident of July 31, 2010. He states that he filed emergency requests, but that he was not seen. He appears to assert that his condition grew more serious, yet he did not receive medical attention. Credle states that Nurse Todd explained to him that he has suffered damage to his heart, lungs, and right eye, yet he did not provide any care to him. He also states that "Nurse Ivey threatened [him] with write ups to discourage emergency decleration [sic]." Credle states that he suffers from nose bleeds and has developed a disease called Bradycardia as a result of the use of force incident, yet when he seeks medical attention he does not receive it. The motion to dismiss as to this claim is denied.

    iv.    Excessive Force on October 17, 2010

The court must first determine whether defendants violated plaintiff's constitutional rights. It is clearly established that the Eighth Amendment forbids the "unnecessary and wanton infliction of pain" against inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks omitted). Not every infliction of pain is forbidden, however, and prison officials may apply force to an inmate "in a good faith effort to maintain or restore [prison] discipline." Id. at 320 (internal quotation marks omitted). However, where prison officials use force

"maliciously and sadistically for the very purpose of causing harm," an Eighth Amendment violation has occurred. Id. at 320-21 (internal quotation marks omitted). Furthermore, the Supreme Court has held "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Wilkins v. Gaddy, 559 U.S. 34 , ___ , 130 S. Ct. 1175, 1176 (2010) (per curiam). The court must look at "the nature of the force rather than the extent of the injury." Id. "This is not to say the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." Id. at 1178 (citation omitted). It is one factor in applying and reviewing the Eighth Amendment analysis. Id.

In determining whether prison officials have acted maliciously and sadistically, a court should balance: (I) "'the need for the application of force,'" (ii) "'the relationship between the need and the amount of force that was used,'" (iii) the threat reasonably perceived by the responsible officials, and (iv) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Not every malevolent touch by a prison guard, later determined in the calm of a judge's chambers to be gratuitous, gives rise to a federal cause of action. Hudson, 503 U.S. at 9 (citing Johnson, 481 F.2d at 1033). Prison officials are charged with balancing competing governmental interests, such as: the maintenance of order; protection of correctional officers, prison staff and other inmates; and inmates' rights to be free from cruel and unusual punishment. Whitley, 475 U.S. at 321. When correctional officers use force to keep order, they have little time for considered reflection and must quickly and decisively balance the need to maintain order and restore discipline through force against the risk of injury to inmates. Hudson, 503 U.S. at 6.

Plaintiff's entire allegation in regard to the October 17, 2010, claim is that defendant Fowler "pushe[d] me around violently" while defendants Gore and Godwin "block[ed] [the]

door" because plaintiff was attempting to explain to defendants about the misuse of mail violation. Compl., Statement of Claim and Opposition to the Mot. to Dismiss by Defendants.

First, while failure to allege a physical injury is not conclusive of the issue, it may be considered. Plaintiff asserts no injury. Id. Secondly, no specific evidence has been set out that the behavior was done maliciously and sadistically for the purpose of causing harm. Lastly, when defendants assert this defense in the motion to dismiss, plaintiff does not argue about the assault, or provide details. He simply states that "[i]n the case of Fowler assaulting me NCDOC policy was violated due to I complained of use of force not reported by staff." Id. He does not further describe the assault or outline the policy not followed, but there is some implication by his writings that the policy dealt with staff's failure to give a medical examination after a use of force incident. Id. However, plaintiff's next statement is that he was provided with a medical examination, just not the examination he requested. Id. In responding to the motion to dismiss as to this claim, he also references the first assault. Opposition to the Mot. to Dismiss by Defendants. These two assaults were separate and distinguished events. The claim is without merit, qualified immunity protects defendants, and the claim is dismissed.

v.   Mail

Next, Credle argues that defendants have mishandled his mail. The court shall address this in the context of legal and non-legal mail. As for legal mail, it is well established that an inmate has a right to reasonable access to state and federal courts and to communicate with attorneys. See, e.g., Ex Parte Hull, 312 U.S. 546, 549 (1941); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978) (per curiam).   Legal mail generally may not be opened outside of the presence of the prisoner-addressee. Wolff v. McDonnell, 418 U.S. 539, 578 (1974). However, in order to state a claim for denial of access to the courts, the inmate must show actual injury or

that defendants' conduct hindered his efforts to pursue a legal claim or show actual harm by the opening. See, e.g., Lewis v. Casey, 518 U.S. 343, 351–54 (1996); Michau v. Charleston County, 434 F.3d 725, 728 (4th Cir. 2006); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc); American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785-86 (4th Cir. 1993). Further, isolated incidents without negative consequences to plaintiff do not constitute a constitutional deprivation of one's rights. See, e.g., Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (occasional accidental opening of legal mail does not state of claim of the denial of one's right to the access of court). "[P]rison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998). In order to show actual injury, "a plaintiff must provide evidence of such deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Id. at 1290-91 (citations omitted).

Credle has failed to show any harm to any legal matters because of the alleged mail incident or incidents regarding his legal mail. Compl. Statement of Claims. Furthermore, Credle only makes a blanket assertion from which this information can be surmised. There is no actual evidence that Credle in fact has had legal mail confiscated (the mail at issue was some type of mass mailing) and certainly there is no indication that any injury has resulted. Compl., Statement of Claims and Opposition to Mot. to Dismiss by Defendants.

In the context of non-legal mail, while prisoners and detainees have some First Amendment rights in both receiving and sending mail, it is clear that prison officials may place reasonable restrictions on these rights. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989); Pell v. Procunier, 417 U.S. 817, 822 (1974); Bell v. Wolfish, 441 U.S. 520, 544-52 (1979). In

balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail. See Thornburgh, 490 U.S. at 413.

In order to maintain prison security and to check for contraband, prison officials may, pursuant to a uniform and evenly-applied policy, open an inmate's incoming mail. See Wolff, 418 U.S. at 574 -77; Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir. 1985) (per curiam). Detention officers may also open and read outgoing general mail. Rodriquez v. James, 823 F.2d 8, 11-13 (2nd Cir. 1987); United States v. Felipe, 148 F.3d 101 (2nd Cir. 1998).

Under these standards, the allegations of the non-legal mail issue fail to state a constitutional claim. Plaintiff's allegations focus on the review of a mass mailing prior to being mailed. Such a review does not rise to a constitutional infraction. Likewise, there is simply no evidence before the court that the mail review, even if reviewed twice before being sent, was done as a form of retaliation.

Lastly, if plaintiff is trying to argue that he has been precluded from pursuing state criminal remedies for defendants' activities, such request is not cognizable in a section 1983 action. The prosecution of state or federal criminal offenses falls within the exclusive jurisdiction of the executive branch of the state and federal government. See Cort v. Ash, 422 U.S. 66, 79, 95 S. Ct. 2080 (1975) (plaintiff "has no right to bring a private action under federal criminal statutes"); Oliver v. Collins, 904 F.2d 278, 281 (5th Cir. 1990) ("the decision to file or not file criminal charges falls within th[e] category of acts that will not give rise to section 1983 liability"). Thus, the court concludes that defendants are protected by qualified immunity and the claim is dismissed.

vi. Retaliation and Harassment

Claims of retaliation by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999).

To address this claim, the court shall review that which is necessary to establish a claim for retaliation. The right at issue here is that inmates have a right to reasonable access to state and federal courts. However, as set out above plaintiff has failed to make out an actionable claim in regard to this issue. Alternatively, if plaintiff is claiming retaliation because he has filed grievances, the right to file grievances is not a constitutionally protected right and thus no retaliation may be asserted therefrom. Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (citations omitted). Lastly, plaintiff's assertions are conclusory assertions with no supporting facts, no resulting injury, and fail to state a claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (a minimum level of factual support is required in pro se litigation). Thus, the court concludes that qualified immunity shields defendants from the claim and the claim is dismissed.

vii. Request for Preliminary Injunction [D.E. 29 and 32]

The motions for preliminary injunction or temporary restraining order ("TRO") are denied [D.E. 29 and 32]. The substantive standard for granting a temporary restraining order is

10

the same as that for entering a preliminary injunction. See, e.g., U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006). A court may grant a temporary restraining order if the moving party demonstrates "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). A temporary restraining order "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22.

Credle has not established that he is likely to succeed on the merits, that he is likely to suffer irreparable harm absent the requested injunctive relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Thus, Credle has not met his burden of proof. Therefore, plaintiff's motions for a TRO and a preliminary injunction [29 and 31] are denied in the entirety.

D.  Conclusion

Defendants' motion to dismiss [D.E. 25] is DENIED in part and GRANTED in part. The claims for deliberate indifference to a serious medical condition against Nurses Todd and Ivey survive the motion to dismiss, and all other claims, along with defendants Jason Fowler, Brett Godwin, Josh Gore, Kristopher Strickland, Michelle Williams, and Charmon Holsworth, are DISMISSED. The claim against defendant Blackwell for excessive force remains. The motions for injunction are DENIED [D.E. 29 and 31]. The court REFERS the case to Magistrate Judge James E. Gates for entry of a scheduling order.

SO ORDERED, this the 5 day of March 2013.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE